TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Richard S. Greene IV (TN Bar 024450)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 2.900
Washington, D.C. 20002
p: 202.307.3967
c: 202.598.3807
Richard.greene@usdoj.gov

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-8989 |
| Plaintiff, | |
| vs. | COMPLAINT |
| BUCKHORN, INC. | |
| Defendant | |

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), brings this Complaint. Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for the recovery of costs against Buckhorn, Inc. ("Buckhorn" or "Defendant") under Section 107(a) of the Comprehensive Environmental Response,

COMPLAINT - 1

Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), related to the releases and threatened releases of hazardous substances contaminating soil, surface water, sediment and/or groundwater at the New Idria Mercury Mine Superfund Site ("Site").

2. The United States has incurred response costs and will continue to incur response costs in connection with actions taken in response to releases and/or threatened releases of hazardous substances at the Site.

3. The United States seeks reimbursement of response costs EPA incurred responding to the Site together with any attendant interest.

4. The United States also seeks a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Buckhorn is liable to the United States for its future response costs that will be incurred responding to releases and/or threatened releases of hazardous substances at the Site.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff), and CERCLA Section 113(b), 42 U.S.C. § 9613(b) (jurisdiction; venue).

6. Venue is proper in this district under Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. § 1391(b), because the claims arise, and/or the threatened or actual releases of hazardous substances occurred, in and around New Idria, in San Benito County, within the Northern District of California.

## DEFENDANT

7. Defendant Buckhorn, Inc., an Ohio corporation, is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

8. Defendant is a successor in interest to New Idria Quicksilver Mining Company, a Nevada Corporation, which was the "owner" and "operator" of the New Idria Mercury Mine at the Site at the time of disposal of hazardous substances as those terms are defined in Sections 101(20) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a)(2).

COMPLAINT - 2

**STATUTORY BACKGROUND**

9. CERCLA was enacted in 1980 and provides a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions.  42 U.S.C. §§ 9604(a), 9601(25).

10. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), as amended:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or a substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment...

11. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section —…
>
> any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance,
>
> \*     \*     \*
>
> shall be liable for —
> (A) all costs of removal or remedial action incurred by the United States Government...not inconsistent with the national contingency plan....

12. Under Section 101(14)(B) of CERCLA, 42 U.S.C. § 9601(14)(B), a "hazardous substance" means "any element, compound, mixture, solution, or substance designated under Section 9602 of this Title…"

13. Mercury is a "hazardous substance" as defined in Section 101(14)(B) of CERCLA 42 U.S.C. § 9601(14)(B).

14. Under Section 101(22) of CERCLA, 42 U.S.C. § 9601, a "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment…"

15. Under Section 101(29) of CERCLA, 42 U.S.C. § 9601, the term "disposal" shall have the same meaning provided in Section 1004 of the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6903.

16. Under Section 1004(3) of SWDA, the term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any water, including ground waters.

17. Under Section 101(9) of CERCLA, 42 U.S.C. § 9601, a "facility" means "any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located…"

## GENERAL ALLEGATIONS

Site Background

18. The Site is approximately 158 miles southeast of San Francisco, California and is part of a large connected mining area that operated for nearly 120 years.

19. The New Idria Mercury Mine ("Mine") is located at the Site and was one of the largest mercury mines in the country.

20. The Site is located near the head of San Carlos Creek, which is a perennial stream that flows north along the base of a tailings pile at the Site. San Carlos Creek becomes Silver Creek about four miles from the Site, which then drains into Panoche Creek.

21. The Mine generated between one-half and two million tons of waste rock and tailings, which cover 40 acres of the Site.

22. Water flowing through mining tunnels reacts with the naturally occurring iron and sulfur content in the disturbed bedrock to form a sulfuric acid solution known as acid mine drainage

("AMD"), which flows out from the adits or portals. One portal at the Site discharged between 10-50 gallons per minute ("gpm") of AMD, depending on the year and season.

23. For years, AMD has flowed across tailings piles at the Site and into the adjacent San Carlos Creek, resulting in elevated levels of mercury (including methyl mercury), iron, nickel, selenium, zinc and sulfates in San Carlos Creek.

Cleanup Activities at the Site

24. In 1993, EPA performed a Preliminary Site Investigation at the Site, and began engaging in continuing Site management thereafter, including a Preliminary Assessment and Site Investigation in 1997, a Site Reassessment in 2002, and an Expanded Site Inspection in 2010.

25. EPA's investigative actions documented the presence of aluminum, arsenic, copper, iron, mercury, nickel, selenium, and zinc in San Carlos Creek, and of mercury in the entire length of Silver Creek and Panoche Creek.

26. EPA's sampling results also showed mercury concentrations significantly exceeding background concentrations in the surface water pathway leading to Panoche Creek.

27. EPA listed the Site on the National Priorities List ("NPL") on September 16, 2011. *See* 76 F.R. 57662.

28. Between October 2011 and February 2012, EPA conducted a removal action at the Site to reduce the release of contaminants from the Site, which included rerouting AMD away from a tailings pile at the Site, constructing surface water diversions to redirect intermittent stream and storm water flow, and improving site security with fencing, gates, and signs.

29. In December 2015, EPA issued the Defendant a unilateral administrative order ("UAO") to perform additional response actions at the Site that included work to improve slope stability at the tailings pile where EPA focused its work during the 2011-12 removal action and improve the functionality of a settling pond.

30. Under EPA's oversight, the Defendant complied with the UAO and completed the work in February 2016.

31. Between January 1, 1993 and June 12, 2021, EPA incurred over $2 million in response costs.  The United States may continue to incur costs related to the Site.

COMPLAINT - 5

32. As the successor in interest to New Idria Quicksilver Mining Company, who formerly owned and operated the Mine, the Defendant is "the owner or operator of … a facility" and/or a "person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed," within the meaning of Sections 107(a)(1) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9607(a)(1), (2).

33. The Site is a location where hazardous substances have been deposited or otherwise have come to be located, and therefore is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

34. The mercury, methyl mercury, iron, nickel, selenium, zinc and sulfates that have been found at the Site and in downstream waterbodies are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

35. At times relevant to this action, there have been "releases" and "threatened releases" of "hazardous substances" at and from the Site into the environment, within the meaning of CERCLA Sections 101(14), 101(22), 104(a), and 107(a), 42 U.S.C. §§ 9601(14), 9601(22), 9604(a), and 9607(a).

36. The Defendant, Buckhorn, Inc., is a "person," within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. § 9601(21) and 9607(a).

37. The United States has incurred and may continue to incur response costs, as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), by responding to the releases or threatened releases of hazardous substances at the Site. Such costs were not and are not inconsistent with the National Contingency Plan, which is codified at 40 C.F.R. Part 300 ("NCP").

## CLAIM OF RELIEF

### (Reimbursement of Response Costs)

38. Paragraphs 1-37 are realleged and incorporated herein by reference.

39. Under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), the Defendant is liable as a successor to a person who, at the time of disposal of hazardous substances, owned or operated a facility at which hazardous substances were released or threatened to be released, which caused the incurrence of response costs by the United States.

COMPLAINT - 6

40. The Defendant is liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all unrecovered response costs not inconsistent with the NCP incurred by the United States in connection with the Site, plus any applicable interest on those response costs.

41. Under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant is liable to the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for further response costs not inconsistent with the NCP incurred by the United States in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Award the United States a judgment against the Defendants under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs not inconsistent with the NCP incurred by the United States in connection with the Site, plus any accrued interest on the costs;

B. Award the United States a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendants are liable to the United States for further response costs not inconsistent with the NCP to be incurred by the United States in connection with the Site;

C. Award the United States its response costs in bringing this action, including the costs of this enforcement action, costs of attorneys' time for this enforcement action, and other expenses; and,

D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Environment and Natural Resources Division
United States Department of Justice

COMPLAINT - 7

/s/ Richard S. Greene IV
RICHARD S. GREENE IV
TN Bar 024450
Environmental Enforcement Section
Environment and Natural Resources
Division United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 2.900
Washington, D. C. 20002
p:202.307.3967
c: 202.598.3807
Richard.greene@usdoj.gov
STEPHANIE HINDS
United States Attorney
District of Northern California

MICHELLE LO
Civil Chief
Assistant United States Attorney
District of Northern California

OF COUNSEL:
Karen Goldberg
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9

COMPLAINT - 8