TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Richard S. Greene IV (TN Bar 024450)
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Suite 2.900
Washington, D.C. 20002
p: 202.307.3967
c: 202.598.3807
Richard.greene@usdoj.gov

*Attorneys for Plaintiff*

David D. Cooke (CA Bar No. 094939)
Kamran Javandel (CA Bar No. 272900)
Allen Matkins Leck Gamble Mallory & Natsis LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111
p: 415-837-1515
dcooke@allenmatkins.com
kjavandel@allenmatkins.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                  :
                                           :
                 Plaintiff,                :   Civil Action No. 22-8989
                                           :
          v.                               :   CONSENT DECREE
                                           :
BUCKHORN, INC.                             :
                                           :
                 Defendant.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 1

II.     JURISDICTION ................................................................................................. 1

III.    PARTIES BOUND ............................................................................................. 2

IV.     DEFINITIONS ................................................................................................... 2

V.      PAYMENT OF RESPONSE COSTS .............................................................. 5

VI.     FAILURE TO COMPLY WITH CONSENT DECREE ................................. 7

VII.    DISPUTE RESOLUTION ................................................................................ 8

VIII.   COVENANTS BY PLAINTIFF ....................................................................... 11

IX.     RESERVATIONS OF RIGHTS BY UNITED STATES ................................ 11

X.      COVENANTS BY THE SETTLING DEFENDANT ...................................... 12

XI.     EFFECT OF SETTLEMENT/CONTRIBUTION .......................................... 14

XII.    ACCESS TO INFORMATION ......................................................................... 16

XIII.   RETENTION OF RECORDS ........................................................................... 17

XIV.    NOTICES AND SUBMISSIONS ..................................................................... 18

XV.     RETENTION OF JURISDICTION ................................................................. 19

XVI.    INTEGRATION/APPENDICES ...................................................................... 20

XVII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .................. 20

XVIII.  SIGNATORIES/SERVICE ............................................................................... 20

XIX.    HEADINGS ....................................................................................................... 21

XX.     FINAL JUDGMENT ........................................................................................ 21

CONSENT DECREE

# I.    BACKGROUND

A.    The United States of America (United States), on behalf of the Administrator of the U.S. Environmental Protection Agency (EPA), filed a complaint in this matter under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as amended, seeking reimbursement of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the New Idria Mercury Mine Superfund Site in the town of Idria, San Benito County, California.

B.    The Defendant Buckhorn (Settling Defendant) has entered into this Consent Decree and does not admit any liability to the Plaintiff United States arising out of the transactions or occurrences alleged in the complaint.

C.    The purpose of this Consent Decree is to provide for Defendant Buckhorn's payment of the United States' Past Response Costs and Future Response Costs. Except as otherwise settled by this Consent Decree with respect to Settling Defendant's payment of Past Response Costs and Future Response Costs, this Decree does not address Settling Defendant's obligations or continuing performance under the 2018 Administrative Order on Consent (AOC), CERCLA Docket No. AOC-2014-11.

D.    The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without the admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

# II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint,

CONSENT DECREE

the Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. The Settling Defendant shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III.    PARTIES BOUND

2.    This Consent Decree is binding upon the United States and upon the Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of the Settling Defendant under this Consent Decree.

### IV.    DEFINITIONS

3.    Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meanings assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control. However, no provision of the 2018 AOC attached as Appendix A shall be deemed incorporated into this Consent Decree based solely on its inclusion as an appendix except as expressly stated in this Consent Decree.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the U.S. Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

CONSENT DECREE

"EPA" shall mean the U.S. Environmental Protection Agency.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" means all response costs not inconsistent with the National Contingency Plan (including direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States incurs after June 12, 2021 in (i) enforcing this Decree, but only to the extent that the United States prevails in such enforcement efforts; and (ii) in overseeing Settling Defendant's performance of any Interim Response Action ("IRA") that is not performed under the 2018 Administrative Order on Consent and with respect to which EPA has made a determination, pursuant to Section 2.2.14 of the Statement of Work attached thereto, that performance of such IRA, before EPA's selection of a final remedy, is needed.  Notwithstanding the foregoing, Future Response Costs shall not include any costs Buckhorn has paid or is obligated to pay under the 2018 AOC.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Interim Response Action" shall mean any response action prior to the selection of the final remedial action in the Record of Decision for the Site that is not otherwise required or performed under the 2018 AOC.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"New Idria Mercury Mine Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA under Section 122(b)(3) of CERCLA, 42 U.S.C.§ 9622(b)(3).

CONSENT DECREE

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" shall mean the United States and Settling Defendant.

"Past Response Costs" means all costs (including, without limitation, direct, indirect, payroll, contractor, travel, and laboratory costs) that the United States incurred in connection with the Site through June 12, 2021, plus all accrued interest on such costs accrued under Section 107(a) of CERCLA. Notwithstanding the foregoing, Past Response Costs shall not include any costs Buckhorn has paid or is obligated to pay under the 2018 AOC.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" or "Defendant" shall mean Buckhorn, Inc.

"Site" shall mean the New Idria Mercury Mine Superfund Site, encompassing approximately 2,000 acres, located near the town of Idria, California, roughly 70 miles southeast of Hollister, California, and encompassing the New Idria group of mines and adjacent mining areas in San Benito and Fresno Counties, including but not limited to the New Idria Mercury Mine, the West Idria Mine, the Sulphur Spring Mine, the Molina (aka Molino) Mine, and the San Carlos Mine, from which ore was transported to the New Idria Mercury Mine processing area for treatment, and includes any tunnel, building, structure, installation, equipment, pipe or pipeline well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or any area in proximity to these mines where mining operations occurred or where a hazardous substance or pollutant or contamination associated with such mining operations or other uses of the property has been deposited, stored, disposed of, or placed, or otherwise come to be located, including surface water bodies or sediments and groundwater, and all suitable areas within proximity of such contamination necessary for the implementation of response actions and depicted generally on the map attached to the 2018 AOC.

"State" means the State of California.

CONSENT DECREE

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"2018 Administrative Order on Consent" or "2018 AOC" shall mean EPA's November 27, 2018 Administrative Order on Consent, CERCLA Docket No. AOC-2014-11, including the Statement of Work attached thereto, issued under Sections 104, 107 and 122 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9604, 9607 and 9622.

## V.    PAYMENT OF RESPONSE COSTS

4.    **Payment by Settling Defendant for Past Response Costs**. Within 30 days after the Effective Date, Settling Defendant shall pay to EPA One Million Eight Hundred Fifty-Five Thousand Five Hundred Dollars ($1,855,500.00).

5.    Settling Defendant shall make payment at https://www.pay.gov in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit (FLU) of the U.S. Attorney's Office for the District of Northern District of California after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System (CDCS) number, Site/Spill ID Number 09K7, and DJ Number 90-11-3-11969, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Lori Copeland
> Financial Planning and Analysis Manager
> Buckhorn, Inc.
> 400 Techne Center Dr.
> Milford, OH  45150
> Tel: (937) 632-3006
> Email: lcopeland@buckhorninc.com

on behalf of Settling Defendant. Settling Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XIV (Notices and Submissions).

6.    **Deposit of Payment**. The total amount to be paid under Paragraph 4 shall be deposited by EPA in the New Idria Mercury Mine Special Account to be retained and used to

CONSENT DECREE

conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

    **7.    Notice of Payment**. At the time of payment, Settling Defendant shall send to the United States, in accordance with Section XIV (Notices and Submissions), a notice of this payment including references to the CDCS Number, Site/Spill ID Number 09K7, and DJ Number 90-11-3-11969.

    8.    **Payments by Settling Defendant for Future Response Costs**. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

        a.    EPA will deposit the amounts paid under this Paragraph into the New Idria Mercury Mine Special Account.  EPA will retain and use these funds to conduct or finance response actions at or in connection with the Site.

        b.    **Periodic Bills**. On a periodic basis, EPA will send the Settling Defendant a bill for Future Response Costs, including a cost summary listing direct and indirect costs paid by EPA, its contractors, subcontractors, and DOJ. The Settling Defendant may initiate a dispute under Section VII (Dispute Resolution) regarding a Future Response Cost billing, but only if the dispute relates to one or more of the following issues: (i) whether EPA has made an arithmetical error; (ii) whether EPA has included a cost item that is not within the definition of Future Response Costs; or (iii) whether EPA has paid excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Settling Defendant must specify in the Notice of Dispute the contested costs and the basis for the objection.

        c.    **Payment of Bill**. The Settling Defendant shall pay the bill, or if initiate dispute resolution, the uncontested portion of the bill, if any, within 30 days after receipt of the bill. The Settling Defendant shall pay the contested portion of the bill determined to be owed, if any, within 30 days after the determination regarding the dispute. Each payment for: (i) the uncontested bill or portion of bill, if late, and; (ii) the contested portion of the bill determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the bill through the date of payment. The Settling Defendant shall make payment at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link,

CONSENT DECREE

and include references to the Site/Spill ID and DJ numbers listed in ¶ 41 and the purpose of the payment. The Settling Defendant shall send notices of this payment to DOJ and EPA.

          d.     **Unused Amount**. After EPA conducts a final accounting of the New Idria Mercury Mine Special Account (including 8.c (Payment of Bill)), EPA may, in its unreviewable discretion, apply any unused amount paid by Settling Defendant under this ¶ **8** (Payments by Settling Defendant for Future Response Costs) to any other unreimbursed response costs or response actions remaining at the Site or return it to the Superfund.

    9.     Except as otherwise settled by this Consent Decree with respect to Settling Defendant's payment of Past Response Costs and Future Response Costs, the Parties agree that this Consent Decree does not address Settling Defendant's obligations or continued performance under the 2018 AOC and Settling Defendant otherwise reserves any rights it may have to object to or challenge any EPA action under the 2018 AOC.

## VI.    FAILURE TO COMPLY WITH CONSENT DECREE

    10.    **Interest on Late Payments**. If Settling Defendant fails to make any payment under Paragraph 4 (Payment by Settling Defendant for Past Response Costs) or Paragraph 8 (Payments by Settling Defendant for Future Response Costs) by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

    11.    **Stipulated Penalty.** If any amounts due to EPA under Paragraph 4 (Payment by Settling Defendant for Past Response Costs) or Paragraph 8 (Payments by Settling Defendant for Future Response Costs) are not paid by the required date, Settling Defendant shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, in addition to the Interest required by Paragraph 10, $250 per violation per day that such payment is late for the first such violation, and $500 per violation per day that such payment is late for any subsequent violations.

    12.    Stipulated penalties are due and payable within 30 days after the date of the demand for payment of the penalties by EPA. Settling Defendant shall make all payments at https://www.pay.gov in accordance with the procedures under Paragraph 5 and send notice of this payment in accordance with Paragraph 7 (Notice of Payment). Settling Defendant shall

CONSENT DECREE

indicate in the comment field on the https://www.pay.gov payment form that the payment is for stipulated penalties.

13.    Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

14.    If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time, but only to the extent that the United States prevails in such enforcement efforts.

15.    Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

16.    In the event of the insolvency of the Settling Defendant or the failure by the Settling Defendant to make the payments required under this Consent Decree, any successor to Settling Defendant shall be responsible for such payments.

17.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued under this Consent Decree. Payment of stipulated penalties shall not excuse the Settling Defendant from payment as required by Section V (Payment of Response Costs) or from performance of any other requirements of this Consent Decree.

### VII.    DISPUTE RESOLUTION

18.    Unless otherwise provided in this Decree, the Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

CONSENT DECREE

19.     A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute"). Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by EPA is binding unless the Settling Defendant initiate formal dispute resolution under ¶ 20. By agreement of the parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

20.     **Formal Dispute Resolution**

a.     **Statements of Position**. The Settling Defendant may initiate formal dispute resolution by serving on the Plaintiff, within 20 days after the conclusion of informal dispute resolution under ¶ 19, an initial Statement of Position regarding the matter in dispute. The Plaintiff's responsive Statement of Position is due within 20 days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 days after receipt of the response. If appropriate, EPA may extend the deadlines for filing any statement of position for up to 45 days and may allow the submission of supplemental statements of position.

b.     **Formal Decision**. The Director of the Superfund & Emergency Management Division, EPA Region 9, will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on the Settling Defendant unless timely seek judicial review under ¶ 21.

c.     **Compilation of Administrative Record**. EPA shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

21.     **Judicial Review**

CONSENT DECREE

a.      The Settling Defendant may obtain judicial review of the Formal Decision by filing, within 20 days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b.      **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) whether a Work Takeover is warranted; (iii) EPA's selection of modified or further response actions; (vii) any other items requiring EPA approval under the Decree; and (viii) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, the Settling Defendant bear the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c.      Judicial review of any dispute not governed by ¶ 21.b shall be governed by applicable principles of law.

22.      **Escrow Account**. For disputes regarding a Future Response Cost billing, the Settling Defendant shall: (a) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"); (b) remit to that escrow account funds equal to the amount of the contested Future Response Costs; and (c) send to EPA copies of the correspondence and of the payment documentation (e.g., the check) that established and funded the escrow account, including the name of the bank, the bank account number, and a bank statement showing the initial balance in the account. EPA may, in its unreviewable discretion, waive the requirement to establish the escrow account. The Settling Defendant shall cause the escrow agent to pay the amounts due to EPA under ¶ 8, if any, by the deadline for such payment in ¶ 8, or within ten (10) business days after the date of a final ruling, if any, in favor of EPA on the dispute, whichever is later.  If the dispute is resolved in Settling Defendant's favor, then the funds placed in escrow may be returned to Settling Defendant and the escrow account may be closed.  The Settling Defendant responsible for any balance due under ¶ 8 after the payment by the escrow agent.

CONSENT DECREE

23.     The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as EPA agrees, or as determined by the Court.

## VIII.   COVENANTS BY PLAINTIFF

24.     **Covenants for the Settling Defendant by United States**. Except as specifically provided in Section IX (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against the Settling Defendant under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover Past Response Costs and Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the Settling Defendant's satisfactory performance of its obligations under this Consent Decree. These covenants extend only to the Settling Defendant and do not extend to any other person.

## IX.     RESERVATIONS OF RIGHTS BY UNITED STATES

25.     The United States reserves, and this Consent Decree is without prejudice to, all rights against the Settling Defendant with respect to all matters not expressly included within Paragraph 24 (Covenants for the Settling Defendant by United States). Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against the Settling Defendant with respect to:

a.     liability for failure of the Settling Defendant to meet a requirement of this Consent Decree;

b.     liability for costs incurred or to be incurred by the United States that are not within the definition of Past Response Costs or Future Response Costs;

c.     liability for injunctive relief or administrative order enforcement under Section 106 of CERCLA, 42 U.S.C. § 9606;

d.     criminal liability; and

e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments.

CONSENT DECREE

## X.    COVENANTS BY THE SETTLING DEFENDANT

26.    **Covenants by the Settling Defendant**. Except as provided in subparagraph (d), the Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to Past Response Costs, Future Response Costs, and this Consent Decree, including but not limited to:

a.    any direct or indirect claim for reimbursement of Past Response Costs or Future Response Costs from the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. § 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.    any claim arising out of the response actions at the Site for which Past Response Costs or Future Response Costs were incurred, including any claim under the United States Constitution, the State of California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c.    any claim under Section 107 or 113 of CERCLA, 42 U.S.C. § 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law for Past Response Costs or Future Response Costs.

d.    Notwithstanding the foregoing Covenants by Settling Defendant, the Parties agree that Settling Defendant expressly reserves:

(i) Any contribution claims it may have under CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), against the United States (other than EPA) for Past Response Costs or Future Response Costs paid under this consent decree based on the United States' alleged status as a potentially responsible party pursuant to CERCLA, 42 U.S.C. § 9607(a), at the Site.

(ii) Any claims Settling Defendant may have against the United States under the Tucker Act, 28 U.S.C. § 1491, or for breach of contract, indemnity or reimbursement, under Contract No. TPS-37 136, dated September 19, 1940 or other contract with the United States to purchase mercury, to recover Past Response Costs or Future Response Costs paid under this consent decree.

CONSENT DECREE

(iii) However, nothing in this Paragraph or this consent decree shall be construed as an agreement or admission by the United States that Settling Defendant has any valid claims against the United States.  The United States reserves all its rights and defenses should Settling Defendant pursue any of the reserved claims against the United States. Nor shall this consent decree revive any claims that would be barred by the applicable statute of limitations or extend the statute of limitations applicable to Settling Defendant's potential claims against the United States.

27.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

28.    **Waiver of Claims by the Settling Defendant**

a.    The Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have:

(1)    *De Micromis* **Waiver**. For all matters relating to the matters addressed in this Consent Decree against any person where the person's liability to the Settling Defendant with respect thereto is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials;

(2)    *De Minimis*/**Ability to Pay Waiver**. For response costs relating to the Site against any person, except the United States, that has entered or in the future enters into a final CERCLA § 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the matters addressed in this Consent Decree.

CONSENT DECREE

b.    Exceptions to Waivers

(1)    The waivers under this Paragraph 28 shall not apply with respect to any defense, claim, or cause of action that the Settling Defendant may have against any person otherwise covered by such waivers if such person asserts a claim or cause of action relating to the matters addressed in this Consent Decree against the Settling Defendant.

(2)    The waiver under Paragraph 28.a (De Micromis Waiver) shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or if (iii) such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise.

c.    The phrase "matters addressed in this Consent Decree," as used in this Paragraph 28, shall have the same meaning ascribed to that phrase in Paragraphs 30 and 31.

## XI.    EFFECT OF SETTLEMENT/CONTRIBUTION

29.    Except as provided in Paragraph 28 (Waiver of Claims by the Settling Defendant), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section X (Covenants by the Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613),

CONSENT DECREE

defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, under Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response actions and to enter into settlements that give rise to contribution protection under Section 113(f)(2).

30.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement that the Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Past Response Costs and Future Response Costs.

31.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint the United States filed in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement under which the Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) for "matters addressed" in this Consent Decree.

32.     The Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA and DOJ in writing no later than 60 days prior to the initiation of such suit or claim. The Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA and DOJ in writing within 10 days after service of the complaint or claim upon it. In addition, the Settling Defendant shall notify EPA and DOJ within 10 days after service or receipt of any Motion for Summary Judgment, and within 10 days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

CONSENT DECREE

33.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, the Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by the Plaintiff set forth in Section VIII.

## XII.    ACCESS TO INFORMATION

34.     The Settling Defendant shall provide to EPA, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the foregoing.

35.     **Privileged and Protected Claims**

a.     The Settling Defendant may assert that all or part of a Record is privileged or protected as provided under federal law, provided it complies with Paragraph 35.b, and except as provided in Paragraph 35.c.

b.     If the Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiff with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, the Settling Defendant shall provide the Record to Plaintiff in redacted form to mask the privileged or protected information only. The Settling Defendant shall retain all Records that it claims to be privileged

CONSENT DECREE

or protected until the United States has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendant's favor.

        c.     The Settling Defendant may make no claim of privilege or protection regarding:

        (1)    any data regarding the Site, including but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological, or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or

        (2)    the portion of any Record that the Settling Defendant is required to create or generate pursuant to this Consent Decree.

36.     **Business Confidential Claims**. The Settling Defendant may assert that all or part of a Record submitted to Plaintiff under this Section or Section XIII (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. 2.203(b). The Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which the Settling Defendant asserts a business confidentiality claim. Records that the Settling Defendant claims to be confidential business information will be accorded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified the Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2 Subpart B, the public may be given access to such Records without further notice to the Settling Defendant.

37.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIII.   RETENTION OF RECORDS

38.     Until 10 years after the Effective Date, the Settling Defendant shall preserve and retain all non-identical copies of Records now in its possession or control or that come into its

CONSENT DECREE

possession or control, that relate in any manner to its liability under CERCLA with respect to matters addressed in this Consent Decree. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary. The phrase "matters addressed in this Consent Decree," as used in this Section XIII, shall have the same meaning ascribed to that phrase in Paragraphs 30 and 31.

39.    At the conclusion of the record retention period, the Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, and except as provided in Paragraph 35 (Privileged and Protected Claims), the Settling Defendant shall deliver any such Records to EPA.

40.    The Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA and State requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XIV.   NOTICES AND SUBMISSIONS

41.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

**As to DOJ by email**:          eescdcopy.enrd@usdoj.gov

CONSENT DECREE

Re: DJ# 90-11-3-11969

**As to DOJ by mail**:    EES Case Management Unit
                         U.S. Department of Justice
                         Environment and Natural Resources Division
                         P.O. Box 7611
                         Washington, D.C. 20044-7611
                         Re: DJ # 90-11-3-11969


**As to EPA**:    Joshua Wirtschafter
                  Assistant Regional Counsel, U.S. EPA Region 9
**By email:**     Wirtschafter.Joshua@epa.gov


**By Mail:**      Joshua Wirtschafter
                  Assistant Regional Counsel
                  U.S. EPA, Region IX
                  ORC-3
                  75 Hawthorne Street
                  San Francisco, CA  94105
                  Re: Site ID 097K


**As to Settling Defendant**:    David E. Basque
                                 President
                                 Buckhorn, Inc.
                                 400 Techne Center Drive, Suite 215
                                 Milford, OH  45150
                                 Email: dbasque@buckhorninc.com

                                 With a copy to:

                                 Rich Kupiec
                                 Environmental & Safety Compliance Project Manager
                                 Buckhorn, Inc.
                                 1293 S. Main Street,
                                 Akron, OH  44301
                                 Email: rkupiec@buckhorninc.com

## XV.    RETENTION OF JURISDICTION

42.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

CONSENT DECREE

## XVI.  INTEGRATION/APPENDICES

43.    This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree: "Appendix A" is a true and correct copy of the AOC, not including its incorporated Statement of Work.

## XVII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

44.    This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. The Settling Defendant consents to the entry of this Consent Decree without further notice.

45.    If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVIII. SIGNATORIES/SERVICE

46.    Each undersigned representative of the Settling Defendant and the Assistant Attorney General, U.S. Department of Justice, Environment and Natural Resources Division, identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

47.    The Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

48.    The Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that

CONSENT DECREE

Party with respect to all matters arising under or relating to this Consent Decree. The Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that the Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XIX.   HEADINGS

49.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XX.    FINAL JUDGMENT

50.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and the Settling Defendant.

SO ORDERED THIS 21st DAY OF  February  , 2023  .

_____
Thomas S. Hixson
United States Magistrate Judge

CONSENT DECREE

Signature Page for Consent Decree Regarding New Idria Mercury Mine Superfund Site

**FOR THE UNITED STATES OF AMERICA**


TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division


RICHARD S. GREENE IV
Senior Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611


STEPHANIE HINDS
Acting United States Attorney
District of Northern California


MICHELLE LO
Civil Chief
Assistant United States Attorney
District of Northern California

CONSENT DECREE

1   Signature Page for Consent Decree Regarding New Idria Mercury Mine Superfund Site

2

3   **MICHAEL**     Digitally signed by MICHAEL
    MONTGOMERY
    **MONTGOMERY** Date: 2022.12.14 12:44:49
    -08'00'

4   Michael Montgomery
    Director
5   Superfund and Emergency Management Division
    U.S. Environmental Protection Agency
6   75 Hawthorne St.
    San Francisco, CA 94105
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1   Signature Page for Consent Decree Regarding New Idria Mercury Mine Superfund Site

2

3                                          FOR _David E Basque_____

4   11/3/22                                      Buckhorn, Inc.

5   Dated                                  Name (print): David E. Basque
                                           Title:  Vice  President
6                                          Address: 400 Techne Center Drive, Suite 215
                                           Milford, OH  45150
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          24
    CONSENT DECREE